## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

LAURA STAPLETON,
An individual,

        Plaintiff,

v.

ZF ACTIVE SAFETY US, INC.,
A domestic, for-profit corporation,

        Defendant.

Case No.:2:22-cv-12902
Hon. Matthew F. Leitman

                                       /

---

| | |
|---|---|
| Eric I. Frankie (P47232) | Thomas J. Davis (P78626) |
| Attorney for Plaintiff | Kienbaum Hardy |
| 535 Griswold St., Suite 111-542 | Attorney for Defendant |
| Detroit, MI 48226 | 280 N. Old Woodward Ave. |
| (248) 219-9205 | Ste. 400 |
| ericfrankie26@yahoo.com | Birmingham, MI 48009 |
| | (248) 645-0000 |

                                       /

---

## FIRST AMENDED COMPLAINT

Plaintiff Laura Stapleton ("Plaintiff") by and through her attorney, Eric I. Frankie, states for her First Amended Complaint to vacate arbitration award against Defendant ZF Active Safety US, Inc. ("Defendant") as follows:

### I. PARTIES, JURISDICTION AND VENUE.

1.    Plaintiff is resident of the City of Roseville, County of Macomb, State of Michigan.

1

2.      Defendant is a domestic for-profit corporation doing business in the City of Livonia, County of Wayne, State of Michigan.

3.      This Court has jurisdiction of the matter under 9 U.S.C. §10(a) since this matter involves a substantial federal question concerning the national policy in favor or arbitration of private disputes.  Specifically, this matter: (a) involves a state law issue that necessarily raises a disputed federal issue, (b) the federal issue is substantial, and (3) the exercise of jurisdiction does not threaten the state-federal jurisdiction balance.

4.      Venue is proper in this Court because the events giving rise to this action occurred in the Eastern District of Michigan.

## II.  GENERAL ALLEGATIONS.

5.      Plaintiff restates and re-alleges each and every allegation and statement contained in the above paragraphs as if fully set forth herein.

6.      Plaintiff was employed by Defendant from May 5, 2008 until she was terminated on August 19, 2016 as a Senior Business Analyst.

7.      As a condition of her employment by Defendant, Plaintiff was subject to the terms and conditions of TRW Automotive's Problem Resolution Policy which culminated in binding arbitration. (Exhibit A)

8.      On April 14, 2019, Plaintiff submitted her demand to invoke TRW Automotive's Problem Resolution Policy.  Plaintiff brought claims against

2

Defendant for violation of the Michigan Persons With Disabilities Civil Rights Act, MCL §37.1101 et seq. and for workers' compensation retaliation.  Defendant brought a counter-claim against Plaintiff for recoupment of $1,977.60 in STD benefits it had paid to her.

9.     The TRW Automotive Problem Resolution Policy provides that the arbitration process invoked by Plaintiff is subject to the provisions of the Federal Arbitration Act, any applicable substantive federal law and the law of the State in which the dispute arose.

10.     On September 5, 2019, Defendant's counsel Brian Paton notified David Kotzian ("Kotzian") that he had been selected to serve as the arbitrator in the dispute between Plaintiff and Defendant.

11.     On September 9, 2019, Kotzian notified the parties that he had circulated a conflict check with his firm and "based on the results of that conflict check" he would send a letter of formal acceptance with any additional disclosures.

12.      On September 11, 2019, Kotzian submitted his acceptance of appointment letter to counsel indicating additional disclosures which did not raise any conflict concerns.  As a result, the parties' proceeded to litigate the underlying matters with Kotzian serving as arbitrator.

13.     On September 12, 2022,  Kotzian issued his Opinion of Arbitrator Regarding Respondent's Motion for Summary Disposition and dismissed all of

Plaintiff's claims with prejudice. ("Opinion," Exhibit B)  However, Kotzian's
Opinion did not dispose of Defendant's counter-claim.

14.    When Plaintiff was provided with a copy of Kotzian's Opinion, she
discovered that she had consulted with Kotzian prior to submitting her arbitration
demand about representation of her in the very matter for which he served as
Arbitrator.

15.   Plaintiff's counsel immediately demanded that Kotzian vacate his
September 12, 2022 Opinion and recuse himself from any further proceedings.

16.    On September 13, 2022,  Kotzian refused to vacate his September 12,
2022 Opinion  However, Kotzian did immediately withdraw as arbitrator in the
case and wrote the parties as follows:

> **"First, I apologize for not recalling or discovering that Claimant
> (Plaintiff) had previously contacted me when I accepted my
> appointment as arbitrator in this matter in September 2019.  If I had
> recalled or discovered that, I would have certainly disclosed it and
> would have denied the appointment as arbitrator." (Exhibit C)**

17.   On November 30, 2022, Plaintiff's counsel provided Defendant's prior
attorney, Brian Paton ("Paton"), with a copy of the Complaint and asked if he
would accept service on behalf of Defendant.

18.   On December 1, 2022, Paton responded that if Plaintiff's counsel named
"ZF Active Safety US, Inc." as party Defendant and complied with the

requirements of the Federal Rules of Civil Procedure for waiver of service he would accept service of Plaintiff's Complaint.

19.  On December 6, 2022, Plaintiff's counsel notified Paton as follows: "I will provide a waiver of service. Please let me know if you will allow me to do this next week as I am out of town this week. However, if you can't agree to this I will have (sic) complaint delivered next.  I just don't want a situation to arise where you claim that notice to vacate was not provided within three (3) months of the award."

20.  On December 8, 2022, Paton responded in pertinent part: "Defendant will not claim the amendment to substitute the properly named defendant (which, to repeat, is ZF Active Safety US Inc.) causes a timelines or other procedural defect.  Defendant does not waive any other Defenses." (Exhibit D)

### III.  COUNT I-VACATE ARBITRATOR'S AWARD UNDER FAA.

21.    Plaintiff restates and re-alleges each and every allegation and statement contained in the above paragraphs as if fully set forth herein.

22.    The Federal Arbitration Act, 9 U.S.C. §10(a)(2) provides that this Court may vacate an arbitration award where there was evident partiality or corruption in the arbitrator.

23.     The Federal Arbitration Act, 9 U.S.C. §10(a)(3) provides that this Court may vacate an arbitration award where there is any other misbehavior by the arbitrator as a result of which the rights of any party have been prejudiced.

24.     The Federal Arbitration Act, 9 U.S.C. §10(a)(4) provides that this Court may vacate an arbitration award where the arbitrator exceeds their powers, or so imperfectly executes them, that a mutual, final and definite award upon the subject matter was not made.

25.     Here, Kotzian's September 12, 2022 Opinion should be vacated because: (a) he demonstrated evident partiality or corruption, (b) engaged in misbehavior as a result of which Plaintiff's rights were prejudiced, and (c) exceeded his powers, or so imperfectly executed them, that a mutual, final and definite award upon the parties' dispute was not made.

IV. COUNT III-VACTE ARBITRATOR'S AWARD UNDER MCR 3.602

26.     Plaintiff restates and re-alleges each and every allegation and statement contained in the above paragraphs as if fully set forth herein.

27.     MCR 3.602(J)(2)(b) provides that a party may seek to vacate an arbitrator's award if there was evident partiality by the arbitrator, corruption of the arbitrator, or misconduct prejudicing a party's rights.

28.  MCR 3.602(J)(2)(c) provides that a party may seek to vacate an arbitrator's award if the arbitrator exceeded his powers.

29.  Here, Kotzian's September 12, 2022 Opinion should be vacated because he: (a) demonstrated evident partiality, was corrupt or engaged in misconduct prejudicing Plaintiff's rights, and (b) exceeded his powers as arbitrator.

## V.  RELIEF REQUESTED.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court vacate the September 12, 2022 Opinion of Arbitrator Regarding Respondent's Motion for Summary Disposition, remand the matter for arbitration of all claims on the merits to a different arbitrator and grant any other relief this Court deems equitable, just and proper.

Respectfully submitted,

Dated: February 15, 2023

By:_____s/Eric I. Frankie_____
Eric I. Frankie (P47232)
Attorney for Plaintiff
535 Griswold, Suite 111-542
Detroit, MI 48226
(248) 219-9205

## CERTIFICATE OF SERVICE

I, Eric I. Frankie, certify that on February 15, 2023 the foregoing instrument and this Certificate of Service were served on all counsel of record by electronic filing with the Court's ECF filing system.

_____/s/Eric I. Frankie_____

7

# EXHIBIT A

TRW Automotive

Problem Resolution Policy

### III. Alternative Dispute Resolution Process

#### Scope
ADR is a dispute resolution process using neutral, third-party mediators, and, if necessary, neutral, third-party decision-makers (arbitrators).

#### Covered Disputes
The following employment disputes between TRW Automotive and any employee or former employee must be made available for resolution through ADR:

- Involuntary separation such as discharges and layoffs (including discharges based on violations of General Policy Statement No.1, entitled *Legal and Ethical Conduct,* or other written policies) but only to the extent the employee would have a claim in a federal court or a court of his/her state. Involuntary separations include claims of "constructive discharge." An employee laid off due to a reduction in force may challenge his/her selection for layoff, but may not use ADR to challenge the management decision as to the necessity for or the magnitude of the layoff;
- Claims of discrimination, harassment or retaliation based on protected status; and
- Any other employment-related claims provided for by applicable state or federal laws, except those which are excluded below.

ADR is not intended to cover disputes over the content, establishment, or amendment of policies, procedures or practices of TRW Automotive Holdings Corp. or its subsidiaries, Company wage rates or salary structures, Company benefits or pensions, job content or description, the Company's decision as to the necessity for or the magnitude of a reduction in workforce, claims for unemployment and workers' compensation benefits, claims regarding non-compliance with tax law and regulations and claims by the company for injunctive relief including but not limited to unfair competition, trade secrets, or confidential information.

#### Initial Procedures
For the disputes above, the employee may request ADR. The employee must complete a Request for ADR form provided by the Company and submit it to Human Resources. The Request must identify the legal nature of the dispute. The Request must include a check for $100 made payable to TRW for the employee portion of the filing fee. The completed Request for ADR form must be delivered to a designated Human Resources representative or by registered or certified mail, return receipt requested, to the employee's local Human Resources department. The Request for ADR must be delivered (1) within 180 days of the date the dispute arose or (2) within the applicable time period permitted by law, whichever is later. Completed forms will be deemed delivered when they are mailed as required above, or personally delivered. The limitations period for initiating arbitration shall continue to run during any period when the employee utilizes the earlier steps of the Problem Resolution Policy or otherwise attempts to resolve the dispute with a member of TRW Automotive management or Human Resources staff. An employee's filing of a charge or complaint

TRW Automotive

## Problem Resolution Policy

with a government administrative agency shall not affect an employee's right to utilize arbitration or the running of the arbitration process limitations period.

The parties will initially seek to administer the ADR process themselves, including selection of a mediator and, if necessary, selection of an arbitrator. If either party requests, TRW Automotive shall send a copy of the completed Request for ADR form(s) to a neutral third party administrator (the "Administrator") for administration of the ADR process, including administering the selection of a mediator and, if necessary, an arbitrator. The Administrator may be the American Arbitration Association, CPR Institute for Dispute Resolution, JAMS or other neutral organization providing alternative dispute resolution administration services.

Employees and their representatives seeking to process covered disputes through mediation and/or arbitration are expected to work with Company representatives to progress the matter to a prompt conclusion. If at any time after initiating an ADR the employee or the employee's representative fails to correspond or otherwise communicate with the Company's representative for a period of one year, the employee will be considered to have abandoned his/her claim for failure to prosecute.

### Representation
The employee and TRW Automotive have the right to consult with or be represented by an attorney or other representative at any time in the ADR process (mediation and/or arbitration). If the employee or TRW Automotive intend to utilize a representative during either mediation or arbitration, each must notify the other of the name, address and telephone number of their representative at the time the Request for ADR is submitted. If a representative is not obtained until later in the proceeding, the representative shall be identified as soon as possible after the representative becomes involved in the matter, but in no event later than thirty days before the arbitration.

Each party shall be responsible for the costs and fees, if any, of his/her own representative, except as provided by law.

### Costs
TRW Automotive will pay the filing and related fees of the Administrator, if any. TRW Automotive will pay the costs of the mediator and arbitrator, except that the arbitrator may assess charges against either party to offset costs, including additional arbitrator fees, resulting from the postponement or cancellation of any proceeding caused by a party or his/her representative, or as a result of inappropriate conduct by a party or his/her representative consistent with applicable law. TRW will pay the costs of any facilities used for the mediation and arbitration.

### Location
Unless otherwise agreed to by both parties, the mediation and/or arbitration will be held in the locality where the employee is or was last employed.

9

TRW Automotive

# Problem Resolution Policy

## A. Mediation

The parties to a dispute shall first attempt to resolve their dispute through mediation. In mediation, a mediator attempts to facilitate resolution of the dispute mutually agreeable to the company and the employee. The mediator can not impose a resolution.

Typically, mediation will occur prior to conducting discovery. However, if both parties consent, agreed-upon discovery designed to assist in understanding the other party's position may take place in advance of mediation. Conducting such discovery shall not preclude the party from conducting further discovery in the event mediation fails to resolve the dispute.

The mediator shall assist the employee and TRW Automotive in attempting to reach a settlement of the dispute. In doing so, the mediator may, among other things, question each party, individually or collectively, listen to arguments and make settlement suggestions to the employee and TRW Automotive. Mediation is a non-binding process and the mediator does not have the power to impose a settlement on the employee or TRW Automotive.

If the dispute is not resolved in mediation and the employee continues to pursue resolution of the dispute, any discussions in mediation, including arguments, proposals or compromises offered by the employee, TRW Automotive, or the mediator shall not be referred to or have any bearing in any subsequent proceeding.

The mediator may not serve in subsequent proceedings in the same dispute between the same parties unless both the employee and TRW Automotive agree in writing.

The parties may mutually agree to bypass the mediation step of this ADR procedure if the parties agree there is no possibility of resolving the dispute in mediation.

## B. Arbitration

### Definition

The final step in the Problem Resolution Policy is arbitration. The arbitration process provides a forum where the employee and the company will receive a hearing and present the dispute to an independent fact finder selected by the employee and the Company. After hearing the evidence and accepting post-hearing memoranda, the arbitrator will issue a decision with reasons.

Arbitration is final and binding on both the employee and the Company.

### Request for Arbitration

If mediation fails to resolve the dispute, and if the employee wishes to proceed to arbitration on a covered dispute, the employee shall send written notification to Human Resources within 45 days of the mediation meeting stating that the employee desires to

10

TRW Automotive
# Problem Resolution Policy

proceed to arbitration and identifying the claims the employee wishes to advance in arbitration. If an Administrator has been engaged, TRW Automotive will notify the Administrator of the parties' intent to arbitrate the dispute.

Arbitration may also be initiated by receipt of a court order compelling ADR.

### Selection of Arbitrator

The employee and TRW Automotive will first attempt to mutually agree upon an arbitrator. If they are unable to agree upon an arbitrator, the Administrator will be requested to provide a list of nine available arbitrators experienced in non-union employment disputes. Each party may strike any or all names on the list it deems unacceptable and submit the remaining names to the Administrator. If only one common name remains on the list of both the employee and TRW Automotive, that individual shall be designated as the arbitrator. If more than one common name remains on the lists, the parties, commencing with TRW Automotive, shall strike names alternately until only one remains. If no common name remains on the list, the Administrator shall furnish a second list of nine names to the employee and TRW Automotive, who shall repeat the selection process. If they are unable to select an arbitrator from the second list, the Administrator shall furnish a third list of nine names. The parties, commencing with TRW Automotive, shall alternately strike names from the list. The last name remaining on the list shall be the arbitrator selected to resolve the dispute. Arbitrator selection should be concluded as promptly as possible.

If the arbitrator named declines or becomes unable to serve or if for any reason the appointment cannot be made from submitted lists, the selection process shall be repeated from the beginning.

### Pre-Hearing Procedures

<u>Response to Claims</u>
Within 30 days of the employee's identification of the claims being advanced to arbitration, TRW Automotive will send the employee its response(s) to the claim(s).

<u>Discovery</u>
Depositions: The employee and TRW Automotive shall have the right to take a reasonable number of depositions, including the deposition of any expert(s) designated by the other party.

Document Production: The employee and TRW Automotive shall have the right to require production of relevant documents from the other, at the cost of the requester.

Interrogatories and Requests for Admissions: The employee and TRW Automotive shall have the right to require that the other party respond under oath to written questions ("interrogatories") and requests for admissions.

11

TRW Automotive
Problem Resolution Policy

Additional Discovery: The parties can agree to additional discovery, including additional depositions. In the event the parties are unable to arrive at an agreement, either party may submit a request to the arbitrator for additional discovery. The arbitrator has full authority to resolve discovery disputes, including compelling a party to make discovery. Other disputes regarding discovery, including privilege disputes, may also be presented to the arbitrator for resolution. The arbitrator has the authority to issue subpoenas to require a non-party to produce documents, to require a witness to give testimony or for any other proper purpose.

Discovery Completion: All discovery must be completed 30 days prior to the date set for hearing the dispute, unless the arbitrator orders otherwise for good cause.

## Service
Service of documents may be made by personal delivery, facsimile transmission, electronic transmission and/or by mail. Any papers or notices necessary or proper for the initiation or continuation of arbitration may be served on the other party at its last known address, provided that a party may designate its representative as the sole recipient for all arbitration documents.

## Administrative Conference
Either the employee or TRW Automotive may request or the arbitrator may require one or more administrative conferences prior to or after the hearing. Such conferences may be used to set procedures, manage discovery, exchange witness and expert lists, narrow the issues in dispute as may be deemed necessary or expedient by the arbitrator for the efficient administration and hearing of the dispute. The pre- or post-hearing procedures may be held by telephone or in person, as the arbitrator deems appropriate.

## Confidentiality Agreements and Protective Orders
The parties are encouraged to enter into agreements to protect the privacy, proprietary or confidentiality interests, trade secrets, or other constitutional or statutory rights of any party. Upon motion, the arbitrator may issue protective orders in response to a motion of a party or a third party witness. Such protective orders may include, but are not limited to, sealing the record of the proceeding or ordering non-disclosure of information and/or documentation, in whole or in part, to protect the privacy, proprietary or confidentiality interests, trade secrets, or other constitutional or statutory rights of the employee, TRW Automotive, or a witness.

## Designation of Witnesses
At least 15 days before the hearing, the employee and TRW Automotive must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the hearing, unless the arbitrator orders otherwise for good cause.

12

TRW Automotive

Problem Resolution Policy

## Hearing Procedures

Date

After consulting with the parties or their representatives, the arbitrator will promptly set a hearing date and time, taking into consideration the schedules and needs of each. The arbitrator will mail written notice of the hearing date and time to the employee and TRW Automotive at least 60 days in advance of the hearing unless the parties otherwise agree or mutually waive notice.

Because the hearing date is initially selected in consideration of convenience of the parties, witnesses and arbitrator, and because the parties have a strong mutual interest in the prompt resolution of the dispute, continuances are strongly discouraged. Continuances may only be sought from the arbitrator by written request of one or more parties. At the discretion of the arbitrator, the hearing may be adjourned and continued on future date(s).

Authority of the Arbitrator

The arbitrator shall preside at the hearing. The arbitrator shall have the authority to resolve any disagreements relating to the applicability, interpretation, and enforcement of these procedures and to rule on the admission and exclusion of evidence, as well as resolve questions of procedure. The arbitrator shall have the authority to impose sanctions, including prohibiting the introduction of evidence and awarding costs, against a party or representative for failing to comply with an order or directive of the arbitrator, on the same grounds as in court.

## Order of Proceedings

The hearing will be conducted informally, but will resemble a court proceeding as set forth below. Each Party shall have the opportunity to make an opening statement. The employee shall then present evidence to support his/her claim. TRW Automotive and any defending employee shall then present evidence supporting its defense. Witnesses shall submit to questioning by each party. The arbitrator may vary this procedure, but shall afford each party a full opportunity to present any relevant evidence.

Presentation of Evidence

Federal and state rules relating to the presentation and admissibility of evidence are not controlling, but will be applied by the arbitrator as the arbitrator determines appropriate. Relevant evidence, including hearsay, shall be admitted if the arbitrator determines that it is the sort of evidence upon which responsible persons are accustomed to rely in the conduct of their personal and business affairs, regardless of the admissibility of such evidence in court.

Witnesses and Production of Evidence

At the request of a party, the arbitrator may issue subpoenas for the attendance of witnesses and production of documents for the hearing.

13

TRW Automotive
Problem Resolution Policy

All testimony shall be under oath.  The Arbitrator or the court reporter shall administer the oath.

At the request of a party, the arbitrator may order witnesses to be excluded from the hearing prior to the presentation of their testimony.  However, the employee, his/her representative, TRW Automotive's representative, the TRW Automotive manager whose decision is the subject of the dispute, and any other party and his/her representative are exempt from this exclusion and may attend every stage of the hearing.  Any party, at its expense, may arrange for a court reporter to provide a stenographic record of the proceedings, provided that reasonable advance notice is given to other parties.  The same applies for an interpreter.  If another party desires a copy of the transcript, it shall be made available, but in that event the reporter's total charges should be shared equally by all parties who receive a copy.  For these purposes, all defending parties shall be deemed to be one party.

Burden of Proof
To prevail in arbitration, the employee bears the same burden of proof as if the claim were being heard in court (typically referred to as the "preponderance of evidence" or the "greater weight of the evidence").

**Post Hearing Procedures**
After the close of the hearing, any party desiring to submit a post hearing memorandum shall be permitted to do so.  Unless otherwise designated by the arbitrator, such memoranda shall be submitted within 30 days after the close of the hearing or 30 days after receipt of the transcript (if the proceedings are transcribed).  Reply memoranda may not be submitted unless requested by the arbitrator.  All memoranda submitted to the arbitrator shall also be served on the other party or parties.

**Decision and Award**
In conducting the hearing and issuing a Decision and Award, if any, the arbitrator's actions shall be based solely on: TRW Automotive policy, rules, and regulations; the facts and arguments presented at the hearing; the credibility of the witnesses and other evidence submitted, if relevant; post hearing memoranda (if submitted); relevant precedent; and the applicable substantive state and/or federal law.  The arbitrator shall apply the law of state in which the dispute arose and any applicable federal law.

The Arbitrator shall issue a signed, written Decision within thirty (30) days after the last post-hearing memorandum is submitted.  The Decision shall set forth a summary of claims identified on the Request for ADR; the factual basis and legal principles for its conclusion, and for the Award, if any; and the damages or other relief granted, if any.  In reaching his/her decision, the Arbitrator shall have no authority to change, modify, or establish TRW policies, practices, or procedures.

14

TRW Automotive
## Problem Resolution Policy

In determining the remedy, if any, the arbitrator shall interpret and apply the applicable law of remedies. The arbitrator may grant any remedy or relief, legal or equitable, that would have been available had the claim been asserted in court.

Remedies available include reinstatement and back pay, less any severance, unemployment compensation and interim earnings the employee may have received. If the arbitrator determines that the employee's claim is meritorious but that reinstatement is inadvisable under the circumstances, then the arbitrator may, if appropriate under the applicable law and facts, award front pay less any anticipated future earnings in lieu of reinstatement. The arbitrator will order TRW Automotive to return the employee's $100 filing fee if the arbitrator determines the employee is the prevailing party.

The decision and award are binding on all parties and may not be appealed.

### Governing Law
The arbitration process is subject to the provisions of the Federal Arbitration Act, any applicable substantive federal law, and the law of the state in which the dispute arose.

### Severability
In the event that any provision of this Problem Resolution Policy is determined by a court of competent jurisdiction to be illegal or unenforceable to any extent, such provision shall be enforced to the extent permissible under law, and all remaining provisions shall continue in full force and effect.

### Effective Date; Modification
This policy is effective for all employees hired or re-hired on or after November 1, 2006. The company reserves the right to modify, terminate or suspend this policy, but any such modification, termination or suspension shall not be effective until ten days after notice is given to employees. No such modification, termination or suspension shall affect any covered disputes for which a Request for ADR had previously been filed.

Dated: October 12, 2006

# EXHIBIT B

## ALTERNATIVE DISPUTE RESOLUTION

**In the Matter of the Arbitration between**

    **Laura Stapleton,**

        **Claimant,**

  **And**                                   **Arbitrator David A. Kotzian**

    **Kelsey-Hayes Company,**

        **Respondents.**

## OPINION OF ARBITRATOR REGARDING RESPONDENT'S MOTION FOR SUMMARY DISPOSITION

    I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn and having considered the briefs and exhibits submitted by the parties pursuant to Respondent's Motion for Summary Disposition, hereby rule as follows.

## BACKGROUND

    Claimant Laura Stapleton, was hired by Respondent Kelsey-Hayes Company in May 2008 as a Senior Business Analyst in Respondent's Information Systems/Information Technology Group. Her employment was terminated by Respondent per a letter dated August 18, 2016. (Claimant's Ex. C). In these proceedings, Claimant has asserted claims for violation of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA) and Retaliation under Michigan's Workers' Disability Compensation Act (WDCA). Respondent has now moved for Summary Disposition alleging that there are no genuine issues of material fact, and that Respondent is entitled to judgment as a matter of law. Respondent's Problem Resolution Policy provides me the authority to grant any remedy or relief that would have been available had the claim been asserted in court. Therefore, as the parties do, I look to the Michigan Court Rules for guidance in evaluating the Motion. In deciding a Motion for Summary Disposition under MCR 2.116(c)(10) I must view all evidence in the light most favorable to the opposing party to

Stapleton v. Kelsey-Hayes Company

determine whether it is impossible for her claims or defenses to be supported at the evidentiary hearing because of a deficiency that cannot be overcome. *Lytle v. Malady (On Rehearing)*, 458 Mich. 153 (1998). However, to withstand a motion for summary disposition, the opposing party cannot rely only upon mere conclusory allegations.   Rather, she must come forward with affidavits, depositions, admissions, or other documentary evidence and facts that show that there actually is a genuine issue of material fact to be tried. MCR 2.116(G)(2).

## LEGAL CLAIMS

## I.  PWDCRA CLAIM

### A. Failure to Accommodate Claim

In Count I of her Arbitration Claims Statement, Claimant alleges that Respondent violated the PWDCRA by terminating her "because of her qualifying disability, work-related carpal tunnel syndrome, and by refusing her reasonable accommodation." (Par. 27). Respondent moves for summary disposition arguing that (1) Respondent, in fact, accommodated Claimant in many, many respects; (2) the accommodation Claimant sought as of August 9, 2016, was not an accommodation required by the PWDCRA; and (3) Respondent offered numerous alternative suggested accommodations in August 2016 that would have allowed Claimant to perform her job, but she rejected them.

The most recent accommodation that Claimant sought prior to her termination was stated in an August 9, 2016 note from her physician as follows: "Laura Stapleton may work 4 days 6 hour flex start 6a-9a. Up to 16 hours from home as able. Continue with ergo work station as needed." (Cl's Ex. E). Thereafter, Claimant exchanged emails with her manager, Robert Olah, and Respondent's HR Manager, Lisa McGunagle, about her restrictions and need for accommodation. (Resp's Ex. 33). The three also met to discuss this on August 17, 2016. Claimant recorded that meeting, and I reviewed the recording in connection with this Motion for Summary Disposition. To summarize, Respondent agreed to a flexible start time between 6:00 am and 8:00 am and offered other accommodations for Claimant at her office location in Farmington Hills. However, Respondent rejected Claimant's request to work only 24 hours from the office and up to 16 hours from home "as able." Instead, Respondent insisted that Claimant work full-time from her assigned office effective immediately. Claimant made it clear that this was unacceptable.  In a four page letter dated August 18, 2016, Respondent terminated Claimant's employment. (Ex A to Olah Affidavit).

Stapleton v. Kelsey-Hayes Company

It is clear from the evidence that Respondent terminated Claimant because it would not accept the accommodations she requested and Claimant would not accept the accommodations that Respondent offered. Therefore, there is no need to engage in a burden shifting analysis with respect to the reason for Claimant's termination. Claimant's claim under the PWDCRA rises or falls based on whether Respondent was required to grant her accommodation request under that law. The PWDCRA provides certain protections to employees with a disability. For the circumstances at issue in this case, "disability" is defined as a "determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic . . . substantially limits one or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1103(d)(i)(A).[1] "Unrelated to the individual's ability" means that "with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position." MCL 37.1103(l)(i). The PWDCRA also provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(b).

With respect to accommodations, the general principle under the PWDCRA is that a person "shall accommodate a person with a disability for purposes of employment," except as otherwise provided in the Act or unless the person demonstrates that the accommodation would impose an undue hardship." MCL 37.1102(2). The PWDCRA has specific provisions with respect to accommodations in the employment context. MCL 37.1210. The person with a disability has the burden of proving a claim for failure to accommodate. MCL 37.1210(1).

There are two basis aspects to the portion of the accommodations that were rejected by Respondent: (1) that Claimant only work from the office for 24 hours a week (6 hours/four days per week), and work the rest of her schedule from home; and (2) that Claimant only commits to working a total of 24 hours per week, and the rest was limited to up to 16 additional hours "as able."

---

[1] Respondent also disputes that Claimant can meet the other part of the definition of disability by having a condition that substantially limits her in a major life activity, but that is not the basis for its Motion for Summary Disposition.

3

Stapleton v. Kelsey-Hayes Company

As to the first aspect, I reviewed Respondent's arguments as to why it believed Claimant needed to work from her office location. However, viewing the evidence in the light most favorable to Claimant, I find that there are genuine issues of material fact as to whether Claimant could perform the essential functions of her job by working only 24 hours per week from the office and the rest from home. In particular, Claimant testified that she did not directly interface with customers daily or even weekly; that much of the interfacing was through IM/phone and not in meetings; that 95% of what she did was remote; and that many of her customers were located throughout the world and not in her office location. (Dep. of Stapleton, p. 356). Mr. Olah admitted that Respondent had the technology to allow Claimant to do her work remotely. (Dep. of Olah, pp. 29-30).

An employer is not required to provide the employee's preferred accommodation; only a reasonable accommodation that will allow them to perform the essential functions of the job. *Buck v. Thomas M. Cooley Law Sch.*, 272 Mich. App. 93 (2006). Respondent argues that it offered accommodations to address Claimant's concerns that would have allowed her to work entirely from the office instead of partially at home. Again viewing the evidence in the light most favorable to Claimant, I find that there are genuine issues of material fact as to whether Claimant could have worked entirely from the office with those accommodations. Claimant testified at length and spoke at length in the August 17, 2016 meeting about her medical condition, how it affected her, and how partially working from home was necessary.

The fatal flaw in Claimant's case, though, is in regards to the second aspect of her request for accommodation. Claimant made it absolutely clear in her emails and in the August 17, 2022 meeting that she could not commit to working more than 24 hours per week. Her August 8, 2022 email says she expected to receive medical documentation recommending 24 hours per week "and increase as possible up to 40 using remote flexible hours for the remaining 16 hours." (Resp's Ex. 33, pp. 4-5). She further wrote: "[p]hysically at this time 6 hours with breaks 4 days per week is the most I can do, as notified by doctor Lupo in writing. It's not guaranteed I can do any more than that." (Resp's Ex. 33, p. 3). In the August 17, 2016 meeting, Claimant stated that she "can't predict" how many hours she could work, that her doctor actually wanted her to take "three months off," and that she'll "try" to do the rest remotely, that it "might not be that long, or it might be" before she can do 40 hours, and that she "can't guarantee anything."

For purposes of this Motion, I accept the statements of Claimant and her doctor that she could not commit to a full-time schedule. However, it is clear as a

4

**Stapleton v. Kelsey-Hayes Company**

matter of law that Respondent did not have a duty under the PWDCRA to accommodate this restriction. Claimant's position with Respondent was a full-time job. Claimant admitted in her Arbitration Claims Statement, her deposition, and other communications that her job required far more than forty hours per week. (Resp's Exs. 2, 3; Stapleton dep, pp. 34, 45, 63). Therefore, only being able to work 24 hours per week with uncertainty as to the rest certainly was related to her ability to perform her job. Under the PWDCRA, "[j]ob restructuring and altering the schedule of employees . . . applies only to minor or infrequent duties relating to the particular job held by the person with a disability." MCL 37.1210(16). Working only 24 hours out of a required 40 or more is not "minor or infrequent." Regular and predictable attendance is an essential function. *EEOC v. Ford*, 782 F.3d 753, 762 (6th Cir. 2015).

Claimant argues that her restriction was temporary. But, Michigan courts have held that the PWDCRA "does not require that an employer allow a disabled employee a reasonable time to heal." *Lamoria v. Health Care & Retirement Corp.*, 233 Mich. App. 560, 562 (1999); *Kerns v. Dura Mechanical Components, Inc.*, 242 Mich. App. 1, 16 (2000); *Maat v. County of Ottawa, Michigan*, 657 Fed.Appx. 404 (6th Cir. 2016); *Ashworth v. Jefferson Screw Prods., Inc.,* 176 Mich. App. 737, 744 (1989) (an injured employee failed to state a claim under the PWDCRA even though he informed his employer that he could return to work in two months). As Respondent points out, without knowing how many hours Claimant would be able to work in a week Mr. Olah would not know what work he could assign Claimant on a week-to-week basis and what output he could expect from her, and he would have to assign Claimant's work to other individuals to perform in addition to performing their ongoing duties.

A reasonable time to heal may be required as a reasonable accommodation under the Americans with Disabilities Act (ADA). Even though Claimant does not have an ADA claim, Michigan courts do at times look to the ADA as guidance in interpreting the PWDCRA. *Chmielewski v. Xermac, Inc.,* 457 Mich. 593, 601-602 (1998). However, Respondent would not have been required to accommodate Claimant's request even under the more liberal interpretation of the ADA because the time she needed to heal was indefinite. Under the ADA, an employer is not required to accommodate an indefinite leave, especially when it has already provided a substantial leave. *Maat*, p. 12; *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 718). Here, at the time of her termination, Respondent had already provided Claimant with a lengthy time to heal and resume full-time employment. She was on a medical leave of absence from December 2, 2015 to March 6, 2016 and thereafter was on various reduced work schedules. At the time of her

5

Stapleton v. Kelsey-Hayes Company

termination, it had been at least 8 months since Claimant had been able to commit to work a full-time schedule. Further, Claimant did not provide any end date for her restrictions, and she admitted in the August 17, 2016 meeting that she did not know when she could commit to a full-time schedule. In her doctor's August 1, 2016 treatment notes, he commented that the restricted work schedule "may be required" for the rest of 2016 and that the actual amount of hours she could work was unknown until assessment. Therefore, Claimant's requested accommodation was indefinite. The fact that Respondent previously accommodated Claimant's restrictions on a temporary basis does not obligate it to continue to do so. *Williams v. Dep't of Corrections*, 2015 WL 4469366 (Mich. Ct. App. July 21, 2015).

Further, as described on pages 23-34 of Respondent's Motion, Claimant's medical records after her termination confirm that her need for accommodation would not have ended quickly had she been granted it. For example, as of November 8, 2017 Claimant's doctor stated that she could only tolerate 20-32 hours of work per week, she had surgery in December 2017, and as of May 21, 2018 she could only type a maximum of 3 hours daily. (Resp's Exs. 38, 40-41; Stapleton dep., pp. 146-147). This is further evidence that the partial leave restrictions were indefinite and that Respondent did not have to accommodate them.

Therefore, Claimant was not entitled to protection under the PWDCRA because her disability was related to her ability to perform her job, and Respondent was not required under the PWDCRA to provide the accommodation that she requested. Since Claimant did not meet the definition of a qualified person with a disability, no analysis of undue hardship is necessary. Respondent's Motion for Summary Disposition on Claimant's failure to accommodate claim under the PWDCRA is granted.

**B. Termination Claim**

Claimant also claims that Respondent violated the PWDCRA by terminating her employment because of her disability. As set forth in the termination letter, there is no dispute that Respondent terminated Claimant because it would not accommodate the medical restrictions she requested. However, the PWDCRA does not prohibit an employer for terminating an employee because of a medical condition if the employee cannot perform the essential functions of her job, with or without reasonable accommodation. *Peden v. City of Detroit*, 470 Mich. 195, 222 (2003). For the reasons described above in regards to Claimant's accommodation claim, she cannot meet that burden. A refusal to accommodate an employee whose

6

Stapleton v. Kelsey-Hayes Company

disability is directly related to their ability to perform job duties is not discrimination under PWDCRA. *Hawkins v. Genesys Health Sys.,* 704 F. Supp. 2d 688, 700 (E.D. Mich. 2010). Since I have found that Respondent had no duty to continue to accommodate Claimant's restrictions, Respondent also did not violate the PWDCRA by terminating her employment when she could not work without such restrictions and summary disposition on this claim is also granted.

## II. WDCA CLAIM

Claimant also alleges a violation of Michigan's Workers' Disability Compensation Act. Specifically, she claims that she requested that Respondent grant her benefits under the WDCA, including ongoing medical treatment for her work-related carpal tunnel syndrome and that in retaliation for her requests for such benefits Respondent terminated her employment. (Arbitration Claims Statement, Pars. 29-30). MCL 418.301 (13) provides that:

> "A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

In order to establish a prima facie case of retaliation, an employee who has suffered a work-related injury must show that:

(1) She asserted a right to obtain necessary medical services or actually exercised that right;
(2) The employer knew that the employee engaged in this protected conduct;
(3) The employer took an employment action adverse to the employee; and
(4) The adverse action and the employee's assertion or exercise of a right afforded under the WDCA were causally connected.

*Cuddington v. United Health Services, Inc.*, 826 Mich. App. 264, 275 (2012). If the Claimant establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its adverse employment action. If the employer produces such a reason, the employee must show that the retaliation was a motivating factor for the adverse action. 826 Mich. App. at 277.

Claimant argues that since her request for accommodation was part of her ongoing treatment for a work-related injury, it necessarily violates the WDCA for

7

**Stapleton v. Kelsey-Hayes Company**

her to be terminated for making this request. But, that is not the law. Otherwise, an employer could never reject an accommodation request arising out of a work-related injury, regardless of whether the employee could perform the essential functions of her job and regardless of whether the accommodation request was reasonable. Instead, under the WDCA Claimant must prove that she was discharged <u>because</u> she exercised her rights under the Act. MCL 418.301 (13). Here, Claimant did not initiate her workers' compensation claim until August 15, 2016, and neither Ms. McGunagle nor Mr. Olah knew that until after her termination. (Resp's Ex. 42, McGunagle Aff. Par. 19; Olah Aff. Par. 9). Claimant had asked about filing a workers' compensation claim in June 2016 and submitted an Accident Investigation Form in July 2016. But, Claimant has come forward with no evidence to demonstrate that the inquiry about workers' compensation or submission of the Form was the reason she was terminated. To the contrary, the evidence is clear that Claimant was terminated because Respondent had a legitimate, non-discriminatory reason that she could not perform the essential functions of her job.

Therefore, I find that there are no genuine issues of material fact to support a WDCA claim, and Respondent's motion for summary disposition on that claim is also granted.

## <u>CONCLUSION</u>

I take seriously my obligation to provide the parties with a full and fair opportunity to present their cases. However, there is no reason to put either party through a lengthy evidentiary hearing when it is clear to me that it would be impossible for Claimant to prove her claims because her allegations do not meet the legal requirements under the PWDCRA or the WDCA.

For the reasons stated herein, Respondents' Motion for Summary Disposition is GRANTED, and Claimant's claims are dismissed in their entirety.

<u>September 12, 2022</u>                          *David A. Kotzian*
Date                                              David A. Kotzian

8

# EXHIBIT C

DONALD J. GASIOREK
SAM MORGAN
DAVID F. GRECO
PATRICK B. McCAULEY
DAVID A. KOTZIAN
ANGELA MANNARINO
BARBARA D. URLAUB
RAYMOND J. CAREY
GREGORY A. JONES

OF COUNSEL:
PAUL W. HINES

LEGAL ASSISTANT
PATRICIA A. KRAL

## ■■■ GASIOREK MORGAN GRECO
## ■■ McCAULEY & KOTZIAN P.C.
### Attorneys and Counselors

30500 NORTHWESTERN HIGHWAY   SUITE 425
FARMINGTON HILLS, MI 48334   (248) 865-0001   FAX (248) 865-0002
www.gmgmklaw.com

DOWNRIVER OFFICE:
2933 FORT STREET
LINCOLN PARK, MI  48146

MACOMB COUNTY OFFICE:
43805 VAN DYKE AVENUE
STERLING HEIGHTS, MI 48314

September 13, 2022

*Via Electronic Mail*

Eric I. Frankie, Esq.
535 Griswold, Suite 111-542
Detroit, MI 48226
**ericfrankie26@yahoo.com**

Brian A. Paton, Esq.
12001 Tech Center Drive
Livonia, MI 48150
**brian.paton@zf.com**

Re:   Laura Stapleton and Kelsey-Hayes Company

Dear Counsel:

Yesterday, I issued my Opinion and Order granting Respondent's Motion for Summary Disposition. This morning, counsel for Claimant informed me that his client had previously communicated with me in March 2019 about potential claims against Respondent. I declined to represent Claimant and she did not retain me as her attorney. However, Claimant asserts that I should have disclosed the prior contact and as a result I should disqualify myself from this case and vacate my ruling on Respondent's Motion for Summary Disposition. Respondent denies that there are any grounds for disqualification or vacatur of the ruling.

First, I apologize for not recalling or discovering that Claimant had previously contacted me when I accepted my appointment as arbitrator in this matter in September 2019. If I had recalled or discovered that, I would have certainly disclosed it and would have declined the appointment as arbitrator.

Second, I am withdrawing as the arbitrator in this case effectively immediately. Therefore, any questions going forward about whether there are grounds for disqualification or whether I have the authority to rule on my own disqualification are moot.

Third, since I am withdrawing as the arbitrator and since Claimant's counsel has alleged that my "continued involvement violates [my] ethical duties as a lawyer and arbitrator concerning conflicts of interest," I am not going to make any further rulings or decisions in this case. In particular, I am not going to issue a ruling on whether my decision on Respondent's Motion for Summary Disposition should be vacated or whether I have the

■■■ **GASIOREK MORGAN GRECO**
■■ **McCAULEY & KOTZIAN, P.C.**

September 13, 2022
Page 2

authority to do so. Claimant and her counsel may make that request to a newly appointed arbitrator and/or to a court as they deem appropriate.

Thank you for your attention to this matter.

Very truly yours,

*David A. Kotzian*

David A. Kotzian

# EXHIBIT D

RE: Stapleton v TRW Case No. 2:22-cv-12902-MFL

From:   Paton Brian LVN GLNL (brian.paton@zf.com)

To:     ericfrankie26@yahoo.com

Date:   Thursday, December 8, 2022 at 12:25 PM EST


Eric:

We do not have a problem with you providing the waiver as set forth in Rule 4 next week.  We do not and will not dispute that the Arbitrator's Opinion and Order was issued September 12 and that the lawsuit to vacate, though completely baseless, was filed November 30.  Defendant will not claim that the amendment to substitute the properly named defendant (which, to repeat, is **ZF Active Safety US Inc.**) causes a timeliness or other procedural defect.  Defendant does not waive any other defenses.

Brian Paton

> **From:** Eric Frankie <ericfrankie26@yahoo.com>
> **Sent:** Tuesday, December 6, 2022 9:06 PM
> **To:** Paton Brian LVN GLNL <Brian.Paton@zf.com>; Eric Frankie <ericfrankie26@yahoo.com>
> **Subject:** Re: Stapleton v TRW Case No. 2:22-cv-12902-MFL
>
>
> Brian: I will amend the Complaint to reflect Kelsey-Hayes as the Defendant party.  I will also provide a waiver of service.  Please let me know if you will allow me to do this until next week as I am out of town this week.   However, if you can't agree to this I will have complaint had delivered this week.  I just don't want a situation to arise where you claim that notice of request to vacate was not provided to within three (3) months of the award. Kindly advise on these issues as soon as you can.
>
>
> Eric I. Frankie
>
>
> On Thursday, December 1, 2022 at 12:10:26 PM EST, Paton Brian LVN GLNL <brian.paton@zf.com> wrote:
>
>
>
> Eric,
>
> It is our typical practice to require formal service of process, but if you comply with all the elements of Rule 4(d)(1) of the FRCP, we will sign and return the waiver.
>
> Further, the Complaint you attached to your email does not name a proper party as defendant.  In fact, "TRW Automotive" is not, and has never been, a corporation.  Laura Stapleton was at all times employed by Kelsey-Hayes Company.  After Laura instituted the ADR process, the name of that Company was changed to ZF Active Safety US Inc.  ZF Active Safety US Inc. is therefore the proper name of the defendant party, and I would ask that you amend accordingly.